FILED

2005 Aug-12  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| PACE INTERNATIONAL UNION LOCAL NO. 3-0537, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CASE NO. CV 04-B-2652-W |
| vs. | } | |
| | } | |
| LAFARGE NORTH AMERICA, INC.; LAFARGE BUILDING MATERIALS, INC., | } | |
| | } | |
| Defendants. | } | |

### MEMORANDUM OPINION[1]

This matter is before the court on the Motion to Dismiss (Doc. 7)[2] filed by defendants

Lafarge North America, Inc. and Lafarge Building Materials, Inc. ("Defendants" or

"Lafarge").  Also before the court is a Motion to Amend Complaint (Doc. 15) filed by

plaintiff PACE International Union Local No. 3-0537 ("Plaintiff" or the "Union").  Upon

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant.  The court requested that counsel for defendant prepare a proposed memorandum opinion for the court.  Although the court has made some changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion.  The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n.46 (11th Cir. 1997).  This is an important opinion.  Before requesting a proposed opinion from defendant's counsel, the court had reached a firm decision as to the appropriate outcome.  Counsel drafted the opinion according to the express instructions of the court as to its contents.  These instructions were stated to defendants' counsel, with plaintiff's counsel present, following oral argument.  Although largely taken from the opinion proposed by defendants' counsel, the court personally reviewed this opinion, and the opinion reflects the court's own conclusions.

[2] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion to Dismiss is due to be granted, and plaintiff's Motion to Amend Complaint is due to be denied.

## I.  FACTUAL SUMMARY

Prior to 2001, Blue Circle, Inc. ("Blue Circle") owned and operated a cement plant in Calera, Alabama ("the Roberta Plant"). (Doc. 1. ¶ 3.)  In 2001, Blue Circle was purchased and changed its name to Lafarge Building Materials, Inc. (Doc. 1 ¶ 3.)  At the same time, defendant Lafarge North America, Inc. took over the operation of the Roberta Plant. (*Id.*) The Union is the representative of certain classifications of employees at the Roberta Plant for purposes of collective bargaining. (*Id.* ¶ 1.)

On May 20, 1999, the Union and Blue Circle entered into a collective bargaining agreement ("the Agreement"). (Doc. 1 ¶ 3; Doc. 1, Ex. A.)  The Agreement contains a complaint procedure that outlines the five steps by which the parties are to resolve employee grievances. (Doc. 1 ¶ 5; Doc. 1, Ex. A at 11-15.)  On March 26, 2001, Blue Circle terminated the employment of John Kornegay, Jr., a member of the Union. (Doc. 1 ¶ 4.)  On March 27, 2001, Kornegay filed a grievance pursuant to the Agreement. (Doc. 1 ¶ 5.)  The parties completed the first two steps of the grievance procedure in the Agreement. (Doc. 1 ¶ 5.)  The Union notes that, under the Agreement, "Defendants were required to schedule a time to meet with the [Union] and [Kornegay] to discuss the grievance within 20 working days after the grievance was presented to Defendants." (Doc. 1 ¶ 9; *see also* Doc. 1, Ex. A

2

at 12.)  The Union asserts that defendants failed to set up a third step meeting.  (Doc. 1 ¶¶ 5, 6, 9, 18, 25.)

On September 2, 2004, approximately three and a half years after the termination of Kornegay's employment, the Union filed this lawsuit challenging the manner in which defendants processed Kornegay's grievance.  The Union brings state law claims for breach of contract, declaratory judgment, and specific performance.

## II.  STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

The Federal Rules of Civil Procedure provide that dismissal of an action is appropriate where the plaintiff "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The district court may only grant a Rule 12(b)(6) motion to dismiss where it is demonstrated 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  A claim is also subject to dismissal under Rule 12(b)(6) when the allegations, on their face, show that an affirmative defense bars recovery on the claim.  *See, e.g.*, *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001); *Fowler v. Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1247-48 (N.D. Ala. 2003) (granting motion to dismiss based on expiration of statute of limitations).  Although a motion to dismiss is directed only to the sufficiency of a plaintiff's pleading, the court is not limited to the four corners of a complaint.  It is well-established that the court may also consider documents attached to or incorporated by reference in a complaint.  *See*

3

*Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("Our Rule 12(b)(6) decisions have adopted the 'incorporation by reference' doctrine . . . ."); *Deerman v. Fed. Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1397 (N.D. Ala. 1997) (considering documents attached to and referenced in the complaint in deciding a motion to dismiss).

## III.   DISCUSSION

**A.    Preemption under the Labor Management Relations Act**

The United States Supreme Court has instructed courts to resolve disputes concerning collectively bargained labor agreements pursuant to federal labor law, rather than state law. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 & n.3 (1988). Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185(a) ("Section 301"), provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has made clear that Section 301 does more than merely vest federal courts with jurisdiction to hear claims involving labor contract disputes; rather, "the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 450-51, 456 (1957); *see also Avco Corp. v. Aero Lodge*

*No. 735*, 390 U.S. 557, 560 (1968) ("An action arising under § 301 is controlled by federal substantive law even though it is brought in a state court.").

Since issuing its opinion in *Lincoln Mills*, the Supreme Court has clarified that "in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Int'l Brotherhood of Elec. Workers v. Hechler*, 481 U.S. 851, 857 (1987) (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962)). Therefore, state law claims are preempted not only when they arise directly out of the alleged breach of a collective bargaining agreement, but also when they require interpretation of the parties' intent in agreeing to a contract provision. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985); *see Hechler*, 481 U.S. at 859 n.3 (stating that the rule set forth in *Lueck* is that "when a state-law claim is substantially dependent on analysis of a collective bargaining agreement, a plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the suit as a state-law claim").

Consistent with these principles, the Eleventh Circuit has held that state law claims are preempted if they are "either founded directly on rights created by a collective bargaining agreement or substantially dependent upon an analysis of a collective bargaining agreement." *Darden v. United Steel Corp.*, 830 F.2d 1116, 1119 (11th Cir. 1987). Defendants argue that all of the Union's claims are founded upon alleged rights created by, or require an interpretation of, a collective bargaining agreement covered by the LMRA.

Count I of the Union's Complaint is a state law claim for breach of contract. (Doc. 1 ¶¶ 12, 14.) In Count I, the Union claims defendants breached the Agreement by failing to set up a Step 3 meeting and failing to provide an answer within ten working days of the meeting. (Doc. 1 ¶ 9.) It is undisputed, however, that the Agreement is a collective bargaining agreement, (Doc. 1 ¶¶ 1, 3; Doc. 1, Ex. A at 1-5), and therefore must be construed in accordance with federal labor laws. Thus, this claim requires dismissal due to federal preemption. *See, e.g.*, *Parham v. Carrier Corp.*, 9 F.3d 383, 390 (5th Cir. 1993) ("State law causes of action for violation of a collective bargaining agreement - essentially breach of contract claims - are entirely displaced by section 301."); *Clarke v. Laborers' Int'l Union of N. Am.*, 916 F.2d 1539, 1541 (11th Cir. 1990) ("[A]ny state law cause of action for violation of [collective bargaining] agreements is entirely displaced by federal law under § 301."); *Redmond v. Dresser Indus.*, 734 F.2d 633, 635 (11th Cir. 1984) ("This case clearly presents a suit for violation of a contract between an employer and a labor union representing employees and therefore falls within § 301 [of the] LMRA."); *Rasheed v. Int'l Paper Co.*, 826 F. Supp. 1377, 1384 (S.D. Ala. 1993) ("It is settled law that claims which allege breach of contract of a collective bargaining agreement . . . are preempted by § 301.").

Count II seeks a declaratory judgment as to the meaning of the Agreement and the Union's (and/or Kornegay's) rights therein.[3] In Count II the Union requests that the court

---

[3] The Union in Count II also refers to "specific performance." (Doc. 1 ¶ 16.) As explained *infra*, specific performance is merely a remedy in a breach of contract claim, not an independent cause of action.

declare that "Defendants have failed to properly follow the grievance procedure," which is unquestionably part of the Agreement, and that the grievance filed by the Union on Kornegay's behalf be deemed settled against defendants. (Doc. 1 ¶ 22.) Therefore, Count II is also preempted by Section 301. *See, e.g.*, *Turner v. Am. Fed'n of Teachers Local 1565*, 138 F.3d 878, 884 (11th Cir. 1998) ("Because resolution of plaintiff's [state law] claim would require interpretation of the terms of the collective bargaining agreement, we hold that this claim is preempted by the LMRA."); *Allocco v. Dow Jones & Co.*, No. 02 Civ. 1029 (LMM), 2002 WL 1402084, at *6 (S.D.N.Y. June 27, 2002) (holding that a plaintiff's claim for declaratory judgment required interpretation of a collective bargaining agreement and was therefore preempted by Section 301).

Count III seeks an order compelling defendants to comply with the terms of the Agreement. (Doc. 1 ¶¶ 24-25.) As an initial matter, Count III does not seek relief under either the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, or the Alabama Arbitration Act, Ala. Code § 6-6-1 *et seq.* (1975). (Doc. 1 ¶¶ 23-26.) In fact, this claim is simply another claim for specific performance. (Doc. 1 ¶ 26 ("Plaintiff demands Judgment from the Court for an entry of an order requiring the Defendants to specifically perform the Agreement.").) Specific performance, however, is not an independent cause of action. Rather, it is simply a narrow remedy available in a subset of breach of contract cases. *See, e.g.*, *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 n.5 (11th Cir. 1998); *LaSalle Nat'l Bank v. Metropolitan Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir. 1994). To the extent Count III

7

is a legal claim, it is simply a breach of contract claim recast to seek a different form of relief. As stated above, Section 301 preempts any state law breach of contract claim based on the interpretation of the Agreement.  Accordingly, even if Count III is a cognizable legal claim, it is preempted as well.

Because all of the claims asserted in plaintiff's Complaint are founded upon alleged rights created by, or that require an interpretation of, a collective bargaining agreement covered by the LMRA, they are preempted by Section 301.

**B.      Section 301 and the Statute of Limitations**

Even if the court construed the Union's Complaint as asserting claims under Section 301,  those claims are time-barred.  Because Section 301 does not contain a statute of limitations, *Int'l Ass'n of Machinists v. Allied Prods. Corp.*, 786 F.2d 1561, 1562 (11th Cir. 1986), the Supreme Court has directed federal courts to borrow the most suitable statute of limitations from other sources. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983).  In *DelCostello*, the Supreme Court noted that while courts may in some circumstances look to state law to borrow the applicable statute of limitations, they should disregard the state statute of limitations "when a rule from elsewhere in federal law clearly provides a closer analogy than state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.* at 172.  The Supreme Court embraced this approach because it recognized that "state statutes of limitations can be unsatisfactory vehicles for the

enforcement of federal law." *Id.* at 161.  Although *DelCostello* involved the application of the statute of limitations to a hybrid Section 301 claim, the Supreme Court did not limit the application of the six-month statute of limitations contained in Section 10(b) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(b) ("Section 10(b)"), to hybrid claims. Rather, the Supreme Court expressly reserved the question of whether it would apply state law to Section 301 claims "where the analogy was less direct or the relevant policy factors were different" than a hybrid claim.  *Id.* at 163.

In accordance with *DelCostello*, the Eleventh Circuit has held that courts should borrow a state statute of limitations only if the state statute "provide[s] a direct analogy and arise[s] out of similar policy considerations." *Allied Prods.*, 786 F.2d at 1563.  Conversely, if "state law does not offer sufficiently direct guidance," federal courts should seek other sources that promote and advance the policy considerations implicated in the lawsuit.[4]  *Id.* Where, as here, the underlying claims involve the interpretation and application of the terms of a collective bargaining agreement and the dispute requires prompt resolution, the action encompasses more federal concerns than a simple breach of contract claim, calling for the application of Section 10(b)'s six-month limitations period.  *See, e.g.*, *J.A. Cavaness Steel Erectors, Inc. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, No. CV 485-393, 1986 WL 15151, at *7 (S.D. Ga. Sept. 9, 1986) (holding that the six (6) month statute

---

[4]  The Eleventh Circuit has expressly rejected the notion that straightforward Section 301 claims require an automatic application of the state statute of limitations.  *Allied Prods.*, 786 F.2d at 1563 n.4.

of limitations period contained in Section 10(b) governed a straightforward Section 301 claim because the "claims [asserted] involve[d] more federal concerns than a simple breach of contract claim and also require[d] prompt resolution, an essential policy consideration of federal labor law.").

Like *J.A. Cavaness*, the claims in this case involve more federal concerns than a simple breach of contract claim. This lawsuit centers entirely upon a dispute arising from the interpretation and administration of the Agreement's grievance procedure. Counts I and II allege that defendants failed to respond adequately to Step 3 of the grievance procedure, and Count III seeks specific performance based upon this same alleged breach. (Doc. 1 ¶¶ 9, 18, 25-26.) Thus, the Union's claims involve federal concerns, as this case centers on an important aspect of federal labor law: the manner in which employees, unions, and employers resolve work-related grievances. *See DelCostello*, 462 U.S. at 168-69 ("It is important to bear in mind the observations made in the *Steelworkers Trilogy* that the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." (internal quotation marks omitted)).

Courts have repeatedly recognized that there is a strong federal policy favoring private and efficient resolution of labor disputes. *Sullivan, Long & Hagerty, Inc. v. Local 559 Laborers' Int'l Union*, 980 F.2d 1424, 1426 (11th Cir. 1993). The Supreme Court has noted that national uniformity is of greater importance where the case involves "those consensual processes that federal law is chiefly designed to promote - the formation of the collective

agreement and the private settlement of disputes under it." *DelCostello*, 462 U.S. at 162-63;

*see also Hechler v. Int'l Brotherhood of Elec. Workers*, 834 F.2d 942, 944 (11th Cir. 1987)

The six-month limitations period in Section 10(b) reflects Congress' view as to "the proper

balance between the national interests in stable bargaining relationships and finality of

private settlements, and an employee's interest in setting aside what he views as an unjust

settlement under the collective-bargaining system." *United Parcel Serv., Inc. v. Mitchell*, 451

U.S. 56, 70 (1981) (Stewart, J., concurring).   Accordingly, the Court will apply Section

10(b)'s six-month statute of limitations to the Union's claims.[5]

A union's claim for breach of contract under Section 301 accrues, and the statute of

limitations begins to run, when the union discovers or in the exercise of reasonable diligence

should have discovered the acts constituting the alleged breach of the collective bargaining

agreement.  *Cox. v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1412 (11th Cir. 1994).  In

this case, the Union argues that defendants' breach was failing to respond timely to the third

step of the complaint procedure.  (Doc. 1 ¶¶ 9, 10, 18, 19.)  According to the Union, a

meeting was supposed to have taken place on or before April 24, 2001 (twenty working days

from the time the Union submitted a grievance on behalf of Kornegay).  (Doc. 1 ¶¶ 9, 18.)

---

[5]  Even if Count III was an independent cause of action to compel arbitration rather than a mere
breach of contract claim, that claim would also be time-barred.  In *Allied Prods.*, the Eleventh Circuit
found that Alabama law did not afford a "reasonably applicable rule as to the proper time limitation
for the union's action to compel arbitration," and the court "adopt[ed] the six month limitation
period of § 10(b)" for attempts to compel arbitration of a labor dispute.  786 F.2d at 1564; *see also
Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pttery Corp.*, 991 F.2d 1545, 1548
(11th Cir. 1993) ("Under Alabama law the statute of limitations for a straightforward § 301 suit to
compel arbitration is six months." (citing *Allied Prods.*).

In its Complaint, the Union alleges that "Defendants failed to set up a meeting and further failed to provide an answer." (*Id.*)  Thus, accepting the allegations in the Complaint as true, the Union was on notice that Defendants had not responded properly to Kornegay's grievance by April 25, 2001, and the limitations period expired no later than October 25, 2001.  Yet, the Union waited until September 2, 2004 - nearly three  years after the expiration of the statute of limitations  -- to file a claim challenging this alleged breach.  Accordingly, the Union's claims are time-barred.

**C.     The Motion to Amend the Complaint is Futile**

Plaintiff responded to defendants' Motion to Dismiss by filing a Motion to Amend Complaint, which sought to add claims under Section 301.  (Doc. 15.)  Rule 15(a) of the Federal Rules of Civil Procedure governs Plaintiff's Motion to Amend Complaint.  Under Rule 15(a), the court is justified in denying a motion to amend a complaint if the amendment is futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *O'Ferrell v. United States*, 174 F.R.D. 108, 108-09 (M.D. Ala. 1997).  "An amendment adding a cause of action is considered futile if the new cause of action does not state a claim upon which relief can be granted, or if the claim would not survive an affirmative defense." *Wyatt v. BellSouth, Inc.*, 176 F.R.D. 627, 630-31 (M.D. Ala. 1998) (citations omitted); *see also O'Ferrell*, 174 F.R.D. at 109 ("An amendment to a complaint will be "futile" if it cannot withstand a motion to dismiss.").  Where the amendment is futile, the court may deny a plaintiff's request to amend

12

its complaint, even where the plaintiff ordinarily has the right to amend its complaint as a matter of course.

Plaintiff's Motion to Amend Complaint seeks only to assert claims under Section 301. (Doc. 15 ¶ 2.)  As discussed *supra*, any claim asserted by the Union on behalf of Kornegay under Section 301 is time-barred.  Accordingly, Plaintiff's Motion to Amend Complaint is futile and is therefore due to be denied.  *See Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (denying motion to amend as futile because the proposed amendment was barred by the applicable statute of limitations).

## IV.  CONCLUSION

For the reasons stated herein, the court is of the opinion that defendants' Motion to Dismiss is due to be granted and plaintiff's Motion to Amend Complaint is due to be denied. An Order granting defendant's Motion to Dismiss and denying plaintiff's Motion to Amend Complaint will be entered contemporaneously with this Opinion.

**DONE** this the 12th  day of August, 2005.


*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE